United States District Court
Southern District of Texas
**ENTERED**
May 02, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KASSANDRA DAVIS, | § § § |
| *Plaintiff,* | § § |
| | §  Case No. 4:20-cv-03390 |
| v. | § § |
| KILOLO KIJAKAZI, Acting Commissioner, Social Security Administration, | § § § § |
| *Defendant.* | § |

## MEMORANDUM AND ORDER

This is an appeal from an administrative ruling that denied Plaintiff Kassandra Davis's request for social security benefits. Magistrate Judge Francis Stacy presided over this case, but it was subsequently reassigned to Magistrate Judge Dena Palermo and then to the undersigned judge. As a result, this Court is empowered to resolve the parties' pending motions for summary judgment.[1] *See* Dkt. 18-19 (motions); Dkt. 23, 25 (responses).

---

[1] The parties expressly consented to "have *a* United States Magistrate Judge conduct all further proceedings, including the trial and judgment." Dkt. 7, 14 (emphasis added). This language "does not specify that the parties only consent to have a specific MJ preside, nor does it indicate that Magistrate [Judge Stacy] will preside." *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 39 (5th Cir. 2008). Accordingly, the parties consented at the outset "to having any MJ preside in their case"—including the undersigned judge. *See, e.g., Unique Dev. Grp., LLC v. Normandy Capital Trust*, 2021 WL 1027570, at *1 n.1 (S.D. Tex. Mar. 17, 2021) (same conclusion). There was no need for the parties to renew their pre-existing consent.

After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court grants Plaintiff's Motion for Summary Judgment (Dkt. 18), denies Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 19), vacates the decision of the Social Security Administration, and remands this case to determine if Plaintiff's impairments preclude her from working as a surveillance monitor.

## **Background and Procedural History**

Plaintiff claims that, in 2007, she was diagnosed with several medical conditions that impaired her ability to work. R.896, 898. Despite those conditions, Plaintiff found employment as a cable clerk at Comcast from 2007 to 2010. R.911-12. From 2010 to 2017, Plaintiff was self-employed, earning less than $16,000 per year. R.912-13.

Plaintiff frequently sought treatment for her conditions. *See* R.34-35 (summarizing Plaintiff's medical history). To date, Plaintiff has been diagnosed with the following medical conditions: seizure disorder, bilateral carpal tunnel syndrome, degenerative disc disease, osteoarthritis, left big toe fusion, diabetes mellitus, hypertension, anemia, obesity, mood disorder, and incontinence. R.29, 32.

Plaintiff applied for Disability Insurance Benefits and for Supplemental Security Income Benefits. R.896, 898. The Commissioner of Social Security

("Commissioner") denied Plaintiff's requested benefits and denied her subsequent request for reconsideration. R.811-17; 827-30.

Plaintiff sought review from an Administrative Law Judge ("ALJ"). After a hearing, the ALJ issued a decision denying Plaintiff's request for benefits. R.45. The ALJ concluded, in pertinent part, that Plaintiff's conditions limited her to sedentary work with only occasional contact with co-workers, supervisors, and the public. R.39. The ALJ further found that Plaintiff could work as a surveillance monitor, a sedentary job that has over 90,000 positions in the national economy. R.42.

The Appeals Council denied Plaintiff's challenge to the ALJ's decision. R.1-6. Plaintiff then sought review in this Court. Dkt. 1.

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted)). It is "more than a scintilla, but it need not be a preponderance."

3

*Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted). When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## Analysis

**I.** **Legal Framework**

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the

4

Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

## II. Plaintiff's challenges to the ALJ's findings

Plaintiff challenges two portions of the ALJ's findings. Addressed sequentially, Plaintiff disputes the ALJ's formulation of her residual functional capacity ("RFC"). Dkt. 18 at 11-18. The RFC is a predicate to steps four and five that determines "the most the claimant can do despite [her] physical and mental limitations and is based on all relevant evidence in the claimant's record." *Kneeland*, 850 F.3d at 754 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005)). Separately, Plaintiff asserts that the ALJ lacked substantial evidence to support its finding at step five that she could work as a surveillance monitor. Dkt. 18 at 8-11. According to Plaintiff, the ALJ failed to explain conflicts between the requirements for that position and Plaintiff's physical and mental limitations.

Based on the record and governing law, the ALJ's resolution of Plaintiff's RFC was supported by substantial evidence. But as part of step five, the ALJ did not fulfill his duty to reconcile discrepancies between the limitations imposed by Plaintiff's RFC, the testimony of the vocational expert, and the job requirements for surveillance monitors as specified in the Dictionary of Occupational Titles. That error warrants vacatur.

5

### A. Substantial evidence supports the ALJ's formulation of Plaintiff's residual functional capacity.

When formulating a claimant's RFC, an ALJ examines the totality of the circumstances surrounding a claimant's impairments. *See* 20 C.F.R. § 404.1545(e). The ALJ must consider all relevant medical opinions and evaluate them based on several factors. *See* 20 C.F.R. § 404.1520c(c) (enumerating the factors). Permissible reasons for discounting medical testimony include contradictory medical reports from other physicians or a lack of credible testimony from the claimant. *See Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988) (affirming ALJ's rejection of the plaintiff's claims of excessive pain as unsupported by her medical history); *see also Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (affirming ALJ's denial of benefits in the face of contradicting medical evaluations). Although the ALJ must explain how he determined that any medical testimony lacks support or is inconsistent with other evidence, the ALJ need not address all the relevant factors. *See* SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1520c(b)(2).

In this case, the ALJ established an RFC for Plaintiff that included "occasional contact" with supervisors, co-workers, or members of the public. R.36-37. The ALJ did so despite a psychiatric evaluation by Dr. Gayle Pitcher, who diagnosed Plaintiff with Bipolar Disorder—a condition that would further

impair Plaintiff's social-interaction abilities. R.38, 1544. But the ALJ disregarded Dr. Pitcher's assessment in favor of the opinions of Dr. Nancy Tarrand, a government-employed expert. R.38-39.

Plaintiff argues that the ALJ improperly "play[ed] doctor" by rejecting Dr. Pitcher's opinion. Dkt. 18 at 13. Plaintiff also maintains that the ALJ's stated reason for discounting Dr. Pitcher's diagnosis is unreasonable. *Id.* at 17. And Plaintiff claims that Dr. Tarrand contradicted herself. *Id.* at 13-14; *see also* Dkt. 23 at 5. Defendant disputes these contentions, arguing that the ALJ properly weighed all the evidence. Dkt. 19 at 9-10.

The record reflects a substantial connection between the ALJ's decision and Dr. Tarrand's testimony about Plaintiff's limitations. The ALJ questioned Dr. Tarrand extensively and probed her concerns about the opinions of Plaintiff's other medical examiners. *See* R.727-30. As Dr. Tarrand explained, Plaintiff's diagnosis during a hospital stay was depressive disorder, not Biopolar Disorder. R.728. Dr. Tarrand also saw indications of "perhaps ... less than full effort" in Plaintiff's responses during her cognitive evaluation. *Id.* (noting that Plaintiff "appeared to have some memory problems, but she also, at times, appeared that she didn't want to try very hard"). As Dr. Tarrand noted, other physicians had not considered Plaintiff's "indicators of poor effort" when reaching their opinions. R.730; *see also* R.39 (ALJ's decision). These are

reasons why Dr. Tarrand concluded that Plaintiff was not as limited as Dr. Pitcher suggested. R.730.

At bottom, the ALJ found Dr. Tarrand's opinions more persuasive than Dr. Pitcher's. This Court cannot second guess the ALJ's assessment. *See Martinez*, 64 F.3d at 176 ("[T]he ALJ [was] free to reject the opinion of any physician when the evidence supports a contrary conclusion." (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("Conflicts in the evidence are for the Secretary and not the courts to resolve.").

A complete reading of Dr. Tarrand's testimony negates Plaintiff's additional contention that Dr. Tarrand contradicted herself. Although Dr. Tarrand testified that Plaintiff's medical records were not internally inconsistent, that has no bearing on Dr. Tarrand's opinion that the assumptions underpinning Dr. Pitcher's conclusions were flawed. *See* R.735. Moreover, the ALJ noted that some of Plaintiff's claimed symptoms were not supported by portions of her medical record. *See* R.38, 40 (noting that evidence about how Plaintiff handled anxiety and engaged with tasks did not support a conclusion that she was unable to work). Substantial evidence supports the ALJ's determination that Plaintiff can perform work requiring "occasional contact with co-workers, supervisors, and the public." R.38-39.

> **B.  As a matter of law, the ALJ erred by failing to reconcile Plaintiff's residual functional capacity with the job requirements for a surveillance monitor.**

When a claim reaches step five, an ALJ may call on a vocational expert ("VE") or a vocational specialist ("VS") to explain the types of jobs that a claimant could perform despite her impairments. 20 C.F.R. § 404.1566(e). As part of this process, the ALJ compares the vocational expert's testimony to the job descriptions in the Department of Labor's Dictionary of Occupational Titles ("DOT"). *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). At this stage, the ALJ must address and resolve any apparent or actual conflict between the expert testimony and the DOT's job descriptions. *Id.* ("When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled."). Failing to address such a conflict would violate the ALJ's affirmative duty to fully develop the record. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016).

As noted above, the ALJ concluded that Plaintiff's impairments limited her to having "occasional [contact with] supervisors, coworkers, and the public." R.741. Nonetheless, the vocational expert opined—and the ALJ concluded—that Plaintiff could still work as a surveillance monitor, and that a significant number of those positions exist in the national economy. R.42,

9

742. This position involves "monitor[ing] premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors," and corresponding with authorities. Dictionary of Occupational Titles 379.367-010, 1991 WL 673244 (updated Jan. 2016).

The only evidence on this issue consists of a brief dialogue at the hearing. R.741-43. The vocational expert began to testify that "the surveillance monitor, there is some public contact, so I…." R.742. The ALJ cut him off, stating "[y]eah, but it's not more than occasional," to which the expert responded "[n]o, I wouldn't – no, I wouldn't think so, Judge. That would [be] the only job under that hypothetical." *Id.* The ALJ did not ask more questions about the level of interpersonal contact demanded of surveillance monitors.

Despite the expert's characterization that a surveillance monitor only has "occasional" interpersonal contact, the DOT tells a different story. According to the DOT, working as a "surveillance-system monitor" requires a "People" skill level of level 6, which is "Significant." Dictionary of Occupational Titles, 1991 WL 673244. A level 6 metric means "[t]alking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." Dictionary of Occupational Titles App'x B, 1991 WL 688701 (updated Jan. 2016). The job also requires "Talking" and "Hearing ... Frequently ... from 1/3 to 2/3 of the time." Dictionary of Occupational Titles, 1991 WL 673244.

The ALJ's decision did not acknowledge the discrepancy between the expert's opinion that a surveillance monitor only has "occasional" contact with others and the DOT's description that the job requires significant people skills and talking frequently "from 1/3 to 2/3 of the time." Nor did the ALJ's decision discuss how a surveillance monitor job comports with Plaintiff's RFC, which limits her to occasional contact with others. Instead, the ALJ declared, without explanation, that the expert "expressed that his testimony was consistent with information contained in" the DOT. R.43. But nothing in the record indicates that the expert addressed the DOT's requirements.

Courts confronted with this issue have reached divergent conclusions. Some courts have found a direct conflict between the "frequent" talking requirements of a surveillance monitor job and a claimant's limitation to "occasional" contact. *See, e.g.*, *Beaupre v. Berryhill,* 2020 WL 343698, at \*6 (D. Nev. Jan. 21, 2020); *Richard v. Colvin*, 2013 WL 4522082, at \*9 (W.D. Wash. Aug. 27, 2013); *Adams v. Astrue*, 2011 WL 1833015, at \*6 (N.D. Cal. May 13, 2011); *Darwin v. Astrue*, 2010 WL 4718793, at \*3 (C.D. Cal. Nov. 12, 2010). Other courts have concluded the opposite, finding no such conflict. *See, e.g.*, *Duncan v. Colvin*, 608 F. App'x 566, 577 (10th Cir. 2015); *Hackett v. Barnhart*, 395 F.3d 1168, 1175-76 (10th Cir. 2005); *Baker v. Colvin*, 2015 WL 5775227, at \*2 (N.D. Okla. Sep. 29, 2015); *accord Marco R.M.*, 2022 WL 257840, at \*6 (E.D.

Va. Jan. 10, 2022); *Harper v. Berryhill*, 2019 WL 652358, at *2 (W.D. Pa. Feb. 15, 2019); *Neeley v. Berryhill*, 2017 WL 3670180, at *9 (D. Del. Aug. 25, 2017).

Decisions that conclude a plaintiff's social-interaction limitations conflict with expert testimony regarding the surveillance monitor position hinge primarily on the distinctions between performing a task "frequently" versus performing it "occasionally." For example, in *Beaupre*, the court held that a plaintiff's limitation to "occasional" interaction facially conflicts with a job that requires "frequent" talking. 2020 WL 343698, at *6; *see also Adams*, 2011 WL 1833015, at *6 (remanding for failure to explain the difference between "dealing with people" and "limited contact with the general public"). Another court emphasized that a surveillance system monitor must have a "significant" ability to "deal with people." *Darwin*, 2010 WL 4718793, at *3; *see also Richard*, 2013 WL 4522082, at *9 (noting that the DOT job description requires notifying the police or other designated agencies, which could constitute members of the public).

By contrast, courts that found no conflict have distinguished "talking" or "dealing with people" from having "contact" with people. In *Duncan*, the Tenth Circuit held that the DOT's requirements did not conflict with a claimant's limitation to "occasional contact." 608 F. App'x at 577. According to the *Duncan* court, surveillance monitors have "rather limited" contact with people. *See id.* (citing *Hackett*, 395 F.3d at 1175-76). Other opinions observe that the

12

DOT code number of 6 for "dealing with people" is on the lower end of the available range. *See Baker*, 2015 WL 5775227, at *2; *accord Neeley*, 2017 WL 3670180, at *9. And another court concluded that the surveillance monitor job "does not require *interaction* with the public, even though it requires frequent talking." *Marco R.M.*, 2022 WL 257840, at *6; *see also Harper*, 2019 WL 652358, at *2 (similar conclusion).

This Court is persuaded by cases that find a direct conflict between a plaintiff's limitation to "occasional" contact and the DOT's description of the surveillance monitor job. Contrary cases downplay the extent to which a surveillance monitor must engage with people. *See Hackett*, 395 F.3d at 1176 (relying on ALJ's description of a surveillance system monitor as "a fairly solitary job"); *Harper*, 2019 WL 652358, at *2 ("[F]requent talking does not necessarily equate to contact with the public or more than occasional, superficial interaction with co-workers."). But the other line of authority comports with the plain text of the DOT, which defines and quantifies the terms "occasional" and "frequent." *See* Dictionary of Occupational Titles App'x C., 1991 WL 688702 (updated Jan. 2016) (defining "occasional" as "up to 1/3 of the time" and "frequent" as "from 1/3 and 2/3 of the time" on the job); *accord* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). Under those definitions, an employee cannot interact with people—whether they be supervisors, co-workers, or the public—typically *less* than 1/3 of the time on the job (*i.e.*,

13

"occasionally") if that job typically requires them to talk to those same people *more* than 1/3 of the time (*i.e.*, "frequently"). *See, e.g.*, *Beaupre*, 2020 WL 343698, at *5-6 ("frequent talking" for surveillance monitor job conflicts with plaintiff's limitation "to occasional contact with others"); *see also, e.g.*, *Eileen D v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4648259, at *3-4 (N.D. Tex. Sept. 6, 2019) (contrasting "frequent talking," which the DOT specifies for sales clerk and personnel clerk jobs, and "occasional public contact").

Defendant does not seriously dispute that the ALJ must explain any conflicts between DOT requirements and the vocational expert's testimony. Rather, Defendant advances three main arguments. All are meritless.

First, Defendant misconstrues Plaintiffs' characterization of the conflict. According to Defendant, the DOT did not have to include all the limitations prescribed in Plaintiff's RFC. *See* Dkt. 25 at 4-5 ("However, Plaintiff does not cite any authority requiring the DOT to identify every possible limitation a claimant could have …."). The challenged conflict, however, concerns the *vocational expert*'s unexplained deviation from the DOT's job description. That conflict exists, as addressed above.

Second, Defendant tries to minimize the probative value of the DOT, claiming that it merely prescribes "maximum job requirements." *Id.* at 5 (quoting SSR 00-4p). But the entire section that Defendant quotes explains how an ALJ *could* explain why he has chosen to rely on a vocational expert's

14

testimony instead of the DOT description. *See* 2000 WL 1898704, at *2 ("Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following …."). Thus, an expert could reasonably explain a deviation from the DOT's requirements by characterizing them as a maximum, rather than a minimum. But no such explanation was proffered or elicited here. The lack of explanation constitutes legal error that impairs this Court's review. *See Beaupre*, 2020 WL 343698 at *6 (reasoning that unexplained conflicts undermine the reviewing court's ability to assess whether substantial evidence supports the ALJ's decision).

Defendant's case law is inapposite. As the Fifth Circuit noted, the *Carey* case "[did] not involve the type of direct and obvious conflict at issue when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *See Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir. 2000). Defendant's remaining case law does not address direct conflicts either. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (finding no conflict between "simple job instructions" and "simple, routine and repetitive work activity"); *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (affirming ALJ's denial of benefits for a claimant limited to light work who could perform jobs with an unspecified amount of pushing and pulling).

Defendant's third contention, that the ALJ properly relied on the vocational expert's testimony, misses the point. In theory, the ALJ could have concluded that the expert's testimony about a surveillance monitor's duties is more persuasive than the static (and conflicting) text of the DOT. Indeed, the expert embraced the ALJ's hypothetical that Plaintiff could perform those duties. R.742. But that hypothetical does not cure the ALJ's failure to "elicit a reasonable explanation for the conflict *before* relying on the [expert] ... to support a determination ...." SSR 00-4P, 2000 WL 1898704 (emphasis added). Nor does the hypothetical bolster the ALJ's unsupported conclusion that the expert's testimony comports with the DOT. *See Leggett v. Berryhill*, 2018 WL 700786, at *9 (D. Mass. Feb. 2, 2018) (rejecting a similar conclusory statement as "not sufficient to satisfy SSR 00-4p where an apparent conflict exists").

The remaining question is whether the ALJ's failure to explore inconsistencies between the vocational expert's opinion and the DOT's requirements caused prejudice. A claimant must show that she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). That is the case here.

Plaintiff's entitlement to benefits rises or falls on whether she can work as a surveillance monitor. This is because the vocational expert identified no other potential job that Plaintiff could perform. R.742. Had the ALJ inquired further into the DOT's job requirements, however, he may have recognized

16

their conflict with Plaintiff's social limitations. If so, the ALJ could have found that Plaintiff cannot perform any work that exists in the national economy—thus entitling her to disability benefits. In short, the ALJ's failure to develop the record could have altered the result. *See Heckler*, 731 F.2d at 1220; *see also, e.g., Beaupre*, 2020 WL 343698, at *6; *Eileen D.*, 2019 WL 4648259, at *3-5 & n.4. Plaintiff has made the requisite showing of prejudice.

## Conclusion

By law, ALJs must develop the record and explain conflicts between the testimony of a vocational expert and the DOT. Such an explanation was not provided, and Plaintiff was prejudiced as a result.

Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Summary Judgment, **VACATES** the decision of the Commissioner of the Social Security Administration and **REMANDS** for further administrative proceedings. The scope of remand will be limited to resolving whether Plaintiff's residual functional capacity, as already determined, permits her to work as a surveillance monitor.

Signed on May 2, 2022, at Houston, Texas.

*Yvonne Y. Ho*
Yvonne Y. Ho
United States Magistrate Judge